UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **MICHAEL KISH** | ) | **CASE NO. 4:04 CV 02224** |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **CHUBB GROUP OF INSURANCE** | ) | **MEMORANDUM OPINION** |
| **COMPANIES,** *et al.* | ) | **AND ORDER** |
| | ) | |
| **DEFENDANTS** | ) | |

This matter is before the Court upon the Defendant, Federal Insurance Company's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56. See (Dkt. # 14).

**I.  FACTUAL HISTORY**

The following facts are undisputed unless otherwise noted. The Defendant, Federal Insurance Company ("Federal"), issued a policy of insurance to the Plaintiff, Michael Kish ("Kish") d/b/a Duncan Lakkes, that included coverage for property damage occurring at two locations: (1) 41889 Helen Street, Elyria, Ohio (the "Helen Street premises"); and (2) 1155 Churchill-Hubbard Road, Youngstown, Ohio (the "Churchill-Hubbard Road premises").[1]  See

---

[1] Federal issued two policies to Kish during the relevant time period. The first policy had the effective dates of November 19, 1999 through November 19, 2000. See (Dkt. # 14, Ex. A). Upon expiration of the first policy, Federal issued a renewal policy effective until November 19, 2001. See (Dkt. # 14, Ex. B). The first policy and the renewal policy were identical in all material respects. The Court therefore

-1-

(Dkt. #1, Ex. A ("Compl.") ¶¶ 4, 11; Dkt. # 3, Defs.' Answer, Affirmative Defenses and Jury Demand ("Answer") ¶¶ 4, 11).

The terms of the Policy provided, in pertinent part:

> **Legal Action Against Us:** No legal action may be brought against [Federal] unless:
> 
> - there has been full compliance with all the terms of this insurance; and
> - the action is brought within two years after the date on which the direct physical loss or damage occurred.

(Policy at 16) (hereinafter referred to as the "suit limitation provision").

On October 28, 2000, a fire caused damage to a building located at the Helen Street premises. See (Compl. ¶ 6; Answer ¶ 6; Dkt. # 14, Def.'s Mem. of Law in Support of Mot. for Summ. J. ("Def.'s Mem. in Support") at 2; Dkt. # 16, Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Pl.'s Mem in Opp'n.") at 2). Kish filed his proof of loss with Federal on March 12, 2001, claiming $1,697,200 in damages. See (Def.'s Mem. in Support, Ex. C). Kish also filed claims with Federal in the amount of $53,400 plus "late charges" for demolition of the fire damaged building. See (Compl. ¶ 8; Answer ¶ 8; Def.'s Mem. in Support at 3; Pl.'s Mem. in Opp'n at 3).[2] Federal immediately commenced an investigation into the origin and cause of the fire. See (Def.'s Mem. in Support at 2; Pl.'s Mem. in Opp'n at 2).

---

shall refer collectively to the policies as the ("Policy") unless otherwise noted.

[2]The record indicates that Kish submitted the demolition expense claims through two invoices dated January 2, 2001 and April 10, 2001, respectively. See (Compl. ¶ 8; Answer ¶ 8). Federal avers that Mr. Kish neither submitted a Sworn Statement in Proof of Loss for the claimed demolition costs, nor did he submit full accounting documentation regarding the same. See (Answer ¶ 8; Def.'s. Mem. in Support at 3).

Meanwhile, on February 21, 2001, Kish filed a proof of loss with Federal for an alleged vandalism incident that purportedly occurred at the Churchill-Hubbard Road premises. See (Compl. ¶ 12; Def's Mem. in Support at 2; Pl.'s Mem. In Opp'n at 2-3). Kish specifically requested $35,000 for damages to two (2) large stone sculptures and a pedestal. See (Def.'s Mem. in Support, Ex. D). As in the case of the fire, Federal commenced an investigation into the origin and cause of the alleged vandalism. See (Def.'s Mem. in Support at 2; Pl.'s Mem. in Opp'n at 3).

On April 3, 2003, Federal issued a letter to Kish's attorney advising that it was denying the two claims. (Def.'s Mem. in Support, Ex. D.) In said letter, Federal cited the conclusions from its investigation that the October 28, 2000 fire had been set deliberately, and that either acting alone or in collusion with others, Kish was responsible for setting the fire. See (Def.'s Mem. in Support, Ex. D at 2).[3] Federal further cited Kish's failure to cooperate during its investigation of the claims. See (Def.'s Mem. in Support, Ex. D at 5).[4]

---

[3]The Policy explicitly excludes coverage for:

loss or damage caused by or resulting from fraudulent, dishonest or criminal acts or omissions committed alone or in collusion with others by you [Kish], your partners, directors, trustees, employees, anyone performing acts coming within the scope of the usual duties of your employees, or by anyone authorized to act for you, or anyone to whom you have entrusted covered property for any purpose.

(Policy at 4.)

[4]The Policy imposes several duties on the insured in the event of loss damage requiring the insured to, *inter alia*, "[c]ooperate with [the insurer] in the investigation, settlement and handling of any claim." (Policy at 16.) Federal concluded in its letter that Kish was not forthright and cooperative during the investigation.

On October 21, 2004 – approximately four (4) years after the fire and three-and-a-half (3½) years after the alleged vandalism – Kish filed the instant action in the Court of Common Pleas, Trumbull County, Ohio, against Federal and CHUBB Group of Insurance Companies ("Chubb"), for breach of contract, arising from the Defendants' failure to remit payment for both property damage claims. See (Compl.). On November 8, 2004, the Defendants removed the action to this Court, citing diversity of citizenship between the parties. See (Dkt. # 2, Notice of Removal).

The Court held a Case Management Conference ("CMC") on December 22, 2004 whereby the parties agreed that Chubb was a non-entity incapable of being sued. See (Dkt. # 13). The Court accordingly dismissed with prejudice all claims against Chubb pursuant to Rule 16(c) of the Federal Rules of Civil Procedure. See (Dkt. #13). The parties further agreed that it was necessary to immediately address the potential preclusive force of the Policy's suit limitation provision.

The instant motion ensued.

## II.   STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering such a motion, the court

must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)). The movant meets this burden "by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a

properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250). "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

### III. LAW AND ANALYSIS

#### A. Choice of Law

In diversity actions, a federal court applies the forum state's choice-of-law provisions. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Spence v. Miles Laboratories, Inc., 37 F.3d 1185, 1188 (6th Cir. 1994). Ohio has adopted the Restatement (Second) of Conflict of Laws to determine choice-of-law questions. See Gries Sports Ent., Inc. v. Modell, 15 Ohio St. 3d 284, 473 N.E.2d 807, syllabus (1984). The Restatement presents the following factors as indicative of the appropriate choice-of-law: (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

The parties concur that Ohio law governs this action as evidenced by their utilization of the laws of the state of Ohio, and the authorities interpreting Ohio law, when addressing the instant motion. Accordingly, the Court shall apply Ohio law to claims at issue.

#### B. Insurance Contracts Under Ohio Law

In Ohio, insurance contracts are construed as any other written contract. See Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., 64 Ohio St. 3d 657, 665, 597 N.E.2d 1096 (1992).

An insurance policy will only require interpretation if the applicable language is ambiguous – that is, open to more than one interpretation. "Policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured." Butche v. Ohio Casualty Ins. Co., 174 Ohio St. 144, 187 N.E.2d 20, paragraph three of the syllabus (1962). Whether an insurance policy is unambiguous or requires interpretation is a question of law. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland Refuse Transfer Co. v. Browning-Ferris Industries, Inc., 15 Ohio St. 3d 321, 322, 474 N.E.2d 271 (1984). In interpreting the insurance contract, common words evince their ordinary meaning unless manifest absurdity results or some other meaning is clearly intended by the instrument. See Alexander v. Buckeye Pipeline Co., 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus (1978).

### C. The Suit Limitation Provision

Ohio statutory law provides that "an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued." OHIO REV. CODE § 2305.06 (2004). However, parties to an insurance contract may establish an alternative limitations period so long as "a reasonable time for suit is provided." Lane v. Grange Mut. Co., 45 Ohio St. 3d 63, 64, 543 N.E. 2d 488, 489 (1989); see also Appel v. Cooper Ins. Co., 76 Ohio St. 52, 61, 80 N.E. 955, 958, syllabus at 1 (1907) (holding that "provisions limiting the time within which suit shall be brought are universally sustained by the courts, with the qualification only that such provisions and limitations must be reasonable").

Kish objects to the reasonableness of the Policy's suit limitation provision.

The Supreme Court of Ohio repeatedly has enforced suit limitation provisions having shorter durations than the Policy's two-year period. See Houshnell v. Am. States Ins. Co., 67 Ohio St. 2d 427, 424 N.E.2d 311, (1981) (finding a suit limitation period of one-year to be reasonable); Appel, 76 Ohio St. at 61, 80 N.E. at 958 (finding a suit limitation period of six-months to be reasonable); see also Thomas v. Allstate Ins. Co., 974 F.2d 706 (6th Cir. 1992) (determining that a one-year suit limitation provision was reasonable under Ohio law). Therefore, the two-year limitation at issue falls well within the perimeters established by Ohio law.

Kish nonetheless contends that the suit limitation provision is unreasonable as applied to the facts presented *sub judice* because he did not have the opportunity to file suit following Federal's denial of the claims. See (Pl.'s Mem. In Opp'n at 6). Kish specifically alleges that "[b]y denying [his] claim after two years had elapsed from the dates of loss, Federal left [] [him] no time to file his cause of action for a wrongful denial. No time is not a reasonable amount of time." (Pl.'s Mem. In Opp'n at 6.) As support for his position, Kish relies on Appel, 76 Ohio St. 52, 80 N.E. 955, where the Supreme Court of Ohio recognized, albeit in dicta, that occasions could arise where other terms in the policy would render the suit limitation provision unenforceable.

Specifically, the suit limitations provision at issue in Appel required the insured to file suit "within six months next after the fire." Appel, 76 Ohio St. at 57, 80 N.E. at 957. The

policy additionally required the insured to satisfy four other conditions precedent to bringing suit: (1) provide immediate notice of the claim to the insurer; (2) submit an inventory of the damaged and undamaged property; (3) file a proof of loss within sixty days after the fire; and (4) submit the claim to arbitration. See Appel, 76 Ohio St. at 58, 80 N.E. at 957. The insured alleged that a reading *in pari materia* of the various conditions precedent and the suit limitation provision revealed that the parties "contemplate[d] a suspension of the limitation during the time required for performance of these conditions, and show[ed] it to have been the intention to allow the assured six months from and after the accrual of his cause of action within which to bring suit." Appel, 76 Ohio St. at 58, 80 N.E. at 957. The court rejected the insured's contention and held that "the obvious meaning of the contract is that no action shall be brought by the assured against the company until performance by him of those things required to be performed as conditions precedent to his right to sue, and in no event after the expiration of six months." Appel, 76 Ohio St. at 60, 80 N.E. at 958. The court noted, however:

> [a] provision by way of limitation in a contract of insurance which does not leave to the assured a reasonable time in which to bring suit after his cause of action accrues is void and of no effect, and, if acting in good faith, and with proper diligence, it happens in a particular case that other provisions of the policy required to be complied with by the assured as a condition precedent to his right to sue cannot be performed by him and leave a reasonable time thereafter in which to bring suit, the limitation will be held unreasonable and inoperative.

Appel, 76 Ohio St. at 60-61, 80 N.E. at 958. The court ultimately enforced the suit limitations provision based on its conclusion that the plaintiff had the opportunity to fulfill all of the

conditions precedent and file suit within the six-month limitation period. See Appel, 76 Ohio St. at 61, 80 N.E. at 958 ("There yet remained, therefore, to the assured, after full compliance with all requirements of the policy, three of the six months within which to bring his suit.").

The Supreme Court of Ohio later addressed a scenario where, as in the present case, the suit limitations period expired while the insurer "was proceeding to its internal determination of whether or not to pay the claim." Broadview Sav. & Loan v. Buckeye Union Ins. Co., 70 Ohio St.2d 47, 51, 434 N.E.2d 1092, 1094 (1982) (per curium). Although the insurer was "only in the process of determining the validity of the claim under the policy" at the time the suit limitations period expired, the court enforced the one-year suit limitation provision. Broadview Sav. & Loan, 70 Ohio St. 2d at 51, 434 N.E. 2d at 1095.

It follows that there lacks any support in Ohio law for Kish's broad contention that "[n]o time is not a reasonable amount of time." The insured in Broadview Sav. & Loan shared Kish's dilemma in that the insurer did not complete the investigation of the claim(s) until after the expiration of the time for filing suit. Nonetheless, the Supreme Court of Ohio enforced the suit limitation provision. See Broadview Sav. & Loan, 70 Ohio St. 2d at 51, 434 N.E. 2d at 1095. This Court is compelled to reach the same conclusion. See Troutman v. State Farm Fire & Cas. Co., 570 F.2d 658 (6th Cir. 1978) (holding that the rule of Erie R.R requires a federal court sitting in diversity to apply Appel and its progeny to cases challenging suit limitation provisions under Ohio law).

The Court observes that Ohio law has softened the seemingly bludgeoning effect of the

-10-

foregoing cases by establishing four restraints on insurers' potential manipulation of suit limitation clauses. First, Ohio law requires that in order "[t]o reduce the time for suit provided by the statute of limitations, an insurance policy must be written in terms that are clear and unambiguous to the policyholder." Lane, 45 Ohio St. 3d at 64, 453 N.E. 2d at 489. Where a suit limitation provision is ambiguous and "reasonably susceptible of more than one interpretation," Ohio courts apply a presumption in favor of the insured by interpreting the provision "strictly against the insurer and liberally in favor of the insured." Lane, 45 Ohio St. 3d at 65, 453 N.E. 2d at 490.

Secondly, Ohio law requires that a suit limitation provision establish a facially reasonable time for bringing suit. See Appel, 76 Ohio St. at 61, 80 N.E. at 958, syllabus. Otherwise stated, a court will not enforce a suit limitation provision that requires the insured to file suit shortly following the loss or damage.

Thirdly, Ohio authority establishes that a suit limitation provision may be unenforceable where the policy requires compliance with a series of other conditions precedent to filing suit and the insured cannot comply with such conditions, while exercising good faith, during the period established by the limitations period. See Appel, 76 Ohio St. at 60-61, 80 N.E. at 958. By way of illustration, an Ohio court may decline to enforce a six month suit limitation provision where another provision of the policy requires the insured's consent to at least a twelve month investigation into any claim prior to bring suit.

Finally, the Supreme Court of Ohio has held that otherwise reasonable suit limitation

-11-

provisions are subject to equitable principles of waiver and estoppel. See Hounshell, 67 Ohio St. 2d at 430, 424 N.E.2d at 313 ("[T]he right to assert the limitation as provided for in the policy may be lost by estoppel or waiver."). In Hounshell, the insured filed suit for breach of an insurance contract in apparent contravention of a one-year suit limitation provision. See Hounshell, 67 Ohio St. 2d at 430, 424 N.E.2d at 312, syllabus. Prior to filing suit, the insurer offered to settle the claim and the parties engaged in extensive negotiations that concluded no sooner than one month before the close of limitations period. See Hounshell, 67 Ohio St. 2d at 430, 424 N.E.2d at 312, syllabus. When the insurer sought to enforce the suit limitations provision during the civil action, the insured argued that the insurer had waived the limitation as evidenced by efforts to settle the claims. See Hounshell, 67 Ohio St. 2d at 430, 424 N.E.2d at 312. The Supreme Court of Ohio concurred in the insured's position, opining:

> [W]aiver in these types of cases may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such express recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract.
>
> The facts in the instant case show that here was more than negotiation or discussion concerning the liability of the company on the policy.  The offers made by American States implicitly led the appellees to believe that the company would be liable under the policy for the pro rata share of the fire loss, and it could be reasonably be found by a trier of the facts that the result which flowed from this stance of the company was the delay of the appellees in filing an action on the insurance contract.

Hounshell, 67 Ohio St.2d at 431, 424 N.E.2d at 314.  The court then precisely stated its

-12-

holding: "[W]here there has been activity by the insurance company which evidences an admission of liability upon the policy, and resulting reliance by the insured thereon and failure to file within the time limitation of the contract, the company is deemed to have waived the limitation." Hounshell, 67 Ohio St.2d at 431, 424 N.E.2d at 314.

However, none of the foregoing safeguards salvages Kish's action from enforcement of the suit limitation provision. It is uncontroverted that the suit limitation provision is unambiguous in that it requires the filing of a suit "within two years after the date on which the direct physical loss or damage occurred." See (Policy at 16). As discussed *supra*, the two year limitation period at issue is facially reasonable. Furthermore, Kish does not direct the Court to any other condition precedent to filing suit which arguably contributed to his nearly four years delay in advancing the present action.

The lone conceivable defense available to Kish is that of waiver or estoppel. Kish vaguely suggests that Federal has waived enforcement of the suit limitation provision in three ways: (1) by examining Kish under oath in April 2002; (2) by requiring Kish to release information in April 2002; and (3) by requesting information from Kish's accountant in May 2002. See (Pl.'s Mem. In Opp'n at 3). Kish appears to reason that the Court should apply the waiver doctrine to the suit limitation provision because "Federal's investigation was still being conducted two years after the fire loss . . . and after the vandalism." (Pl.'s Mem. In Opp'n at 3.)

Kish's argument misses the mark in several respects. It is well-settled that participation in an insurer's investigation of the claim bears little relevance to the application of the suit

-13-

limitation clause. See Colvin v. Globe Am. Cas. Co., 69 Ohio St.2d 293, 432 N.E.2d 167 (1982) (upholding as reasonable a one-year suit limitation period accompanied by a condition precedent to filing suit requiring that "the insured or his legal representative [] fully compl[y] with all of the terms of the policy"), *overruled on other grounds by* Miller v. Progressive Cas. Ins. Co., 69 Ohio St.3d 619, 635 N.E.2d 317 (1994); Spermulli's Am. Serv. v. Cincinnati Ins. Co., 91 Ohio App.3d 317, 321, 632 N.E.2d 599, 601 (Ohio App. 8 Dist. 1992) (opining that "[the compliance] language has nothing to do with the time period within which to file suit"), *discretionary appeal dismiss as having been improvidently granted*, 698 Ohio St.3d 1223, 628 N.E.2d 1387 (1994). In addition, the court in Hounshell explicitly restricted the application of the waiver doctrine to those cases where there is a settlement "offer that is an express or implied admission of liability." Hounshell, 67 Ohio St.2d at 431, 424 N.E.2d at 314. The record before the Court lacks any indication that Federal engaged in any conduct, verbal or otherwise, that could be construed as an admission of liability. Moreover, this matter is readily akin to Broadview Sav. & Loan, where the court reasoned that when an insurer's "adjuster was attempting to gather information for consideration of the claim, and where no settlement offers were made or any assurances made with respect to the likelihood of future settlement offers, there is no basis for an estoppel of the insurance company's right to enforce the suit limitation provision."). Broadview Sav. & Loan, 70 Ohio St. 2d at 52, 434 N.E. 2d at 1095. Therefore, absent an express or implied admission of liability on the part of Federal, Kish's participation in an ongoing investigation is insufficient to render the suit limitation provision unenforceable. See Thomas, 974 F.2d at 710 (holding that the "process of

investigation in determining liability by an insurer does not constitute waiver by the insurer" and that in order to defeat a motion for summary judgment, the plaintiff must produce evidence that the defendant, "indicated any recognition of liability or . . . induced, fraudulently or otherwise, [the plaintiff] from filing suit") (citations and internal quotations omitted).

Under Ohio law, as well as the unambiguous terms of the suit limitation provision at issue, a cause of action arising under an insurance policy accrues at the time of damage or loss. See Kelly v. Travelers Ins. Co., 9 Ohio App.3d 58, 458 N.E.2d 406 (Ohio App. 8 Dist. 1983) (holding that "the period of limitation begins to run from the date of the loss, notwithstanding other policy provisions); Plant v. Illinois Employers Ins. of Wausau, 20 Ohio App.3d 236, 485 N.E.2d 773 (Ohio App. 9 Dist. 1984) (holding that a suit limitation period begins to run on the date of the event giving rise to the claim, rather than at the time of the company's denial of liability); see also Friendly Farms v. Reliance Ins. Co., 79 F.3d 541, 545 (6th Cir. 1996) (applying Ohio law and holding that "contractual limitations provisions in insurance contracts commence the moment that triggering event occurs, regardless of other policy provisions requiring that certain conditions be fulfilled before insured has a right to enforce the contract"). The two-year limitations period established in the Policy therefore commenced on October 28, 2000 for claims arising from the fire at the Helen Street premises, and February 21, 2001 for claims arising from vandalism occurring at the Churchill-Hubbard Road premises. It is undisputed that Kish did not file the claims within the two-year period. The Court has determined that the suit limitation provision was unambiguous, and that no other condition precedent to filing suit rendered the suit limitation provision

unreasonable. The Court further has found that no genuine issue of material fact exists as to the events giving rise to the parties' contracting, as well as the circumstances surrounding Federal's investigation of the claims, which impact the reasonableness of the suit limitations provision. Moreover, the Court has determined that the lone reasonable conclusion to be drawn from the record is that Federal did not engage in any conduct evincing either an express or implied admission of liability; consequently, Ohio law precludes the application of the waiver and estoppel doctrines. Therefore, the Court concludes that the suit limitations provision was reasonable and that Kish did not file suit within the requisite period.

Accordingly, the Court hereby orders that the Defendant, Federal Insurance Company's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56, see (Dkt. # 14), is **GRANTED**. As the Complaint sounds entirely in contract law, summary judgment shall be rendered in favor of Federal on all claims.

**IT IS SO ORDERED.**

**/ s / Peter C. Economus  - July 19, 2005**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**